# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CHRIS BAKER**, *et al.*, | ) |
| | ) |
|     **Plaintiffs**, | ) |
| | ) |
| v. | )    **CIVIL ACTION 10-0307-WS-B** |
| | ) |
| **RBS WORLDPAY, INC.**, *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

## ORDER

This matter comes before the Court on Defendants' Motion to Dismiss or in the Alternative, Motion to Transfer Venue (doc. 12). The Motion has been briefed and is now ripe for disposition.

**I.    Relevant Background.**

Plaintiffs, Chris Baker, Richard Batto and Chris McMeekin, brought this action for breach of contract, conversion and unjust enrichment against defendants, RBS Worldpay, Inc., Royal Bank of Scotland, plc and Citizens Financial Group, Inc. According to the Complaint (doc. 1), plaintiffs were account executives employed by defendant RBS Worldpay (and/or the other defendants, who are affiliated with RBS Worldpay)[1] until being discharged in September 2009. Plaintiffs' job duties included selling credit card, debit card and fleet card processing

---

[1] In their briefs, the parties skirmish over whether defendants Royal Bank of Scotland, plc and Citizens Financial Group, Inc., are properly named as defendants and whether they had an employment relationship with plaintiffs. However, the parties do not explain why the status of Royal Bank of Scotland or Citizens Financial makes an appreciable difference to the venue issues animating the pending motion. There has been no Rule 12 motion seeking dismissal of Royal Bank of Scotland or Citizens Financial as improper parties. As such, the jousting over those entities' status is largely superfluous to the legal issues presented in the Motion to Dismiss or to Transfer Venue, and will not be addressed at this time. For the same reason, plaintiffs' Motion for Leave to File Additional Support (doc. 17), which is directed solely at whether Citizens Financial employed plaintiffs, is **denied** because the proposed supplementation relates to a collateral, ancillary matter and sheds no meaningful light on the § 1404(a) issue before the Court.

services to non-branded gasoline stations, for which defendants paid them commissions. Plaintiffs maintain that defendants abruptly fired them, ostensibly for cause, after plaintiffs discovered and complained about anomalies in defendants' computation of customer transaction charges. The Complaint alleges that plaintiffs' dismissal "was really nothing more than retaliation for complaining about Defendants' illegal practices and a means by which to deny each of them the right to residual commissions." (Doc. 1, ¶ 25.) Plaintiffs further contend that, by signing an agreement with the Petroleum Marketers Association of America ("PMAA") to undercut plaintiffs' sales efforts, failing to pay commissions owed, and terminating plaintiffs without cause, defendants breached their compensation agreement, converted funds belonging to plaintiffs, and unjustly enriched themselves at plaintiffs' expense.[2]

The critical issue raised by defendants' Motion is whether transfer of this action to a different judicial district is appropriate. In particular, defendants maintain that the transfer of this case to the United States District Court for the Northern District of Georgia would promote interests of convenience and justice.[3] For their part, plaintiffs dispute defendants' position that the proposed transferee forum is appreciably more convenient or that transfer of this action is otherwise warranted.

**II.     Analysis.**

*A.     Section 1404(a) Standard.*

Defendants' Motion proceeds under 28 U.S.C. § 1404(a), which provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.*

---

[2] The Complaint filed in this District Court sounds exclusively in state law claims. Nonetheless, federal subject matter jurisdiction properly lies under 28 U.S.C. § 1332, inasmuch as the Complaint shows that there is complete diversity of citizenship and that the amount in controversy exceeds $75,000, exclusive of interest and costs.

[3] Defendants' Motion to Dismiss or Transfer Venue argued as a threshold matter that venue in this District Court was improper pursuant to 28 U.S.C. § 1391(a), and that this action should either be dismissed or transferred (pursuant to 28 U.S.C. § 1406) on that basis. In response to plaintiffs' opposition brief persuasively rebutting that argument, however, defendants announced in a footnote that they would "withdraw their motion to dismiss or transfer due to improper venue." (Doc. 16, at 1 n.1.) Movants having expressly abandoned their § 1391(a) and § 1406 arguments, the Court will not consider them, but will instead focus on defendants' remaining ground for relief that venue should be transferred on a convenience theory.

The U.S. Supreme Court has explained that § 1404(a) requires "the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (internal quotation marks omitted). "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp.2d 1290, 1307 (N.D. Ala. 2003) (citation omitted); *see also England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) ("Trial judges are permitted a broad discretion in weighing the conflicting arguments as to venue" under § 1404(a)). As a general matter, "[t]he burden is on the moving party to prove that a case should be transferred." *Irwin v. Zila, Inc.*, 168 F. Supp.2d 1294, 1296 (M.D. Ala. 2001); *see also In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient"); *Bartronics, Inc. v. Power-One, Inc.*, 510 F. Supp.2d 634, 637 (S.D. Ala. 2007) (following *Ricoh*); *Holmes v. Freightliner, LLC*, 237 F. Supp.2d 690, 692-93 (M.D. Ala. 2002) (observing that, under § 1404(a) analysis, defendant bears burden of demonstrating that proposed transferee forum is more convenient than plaintiff's selected forum).

Motions to transfer pursuant to § 1404(a) are subject to a two-step analysis that examines, first, whether the action could originally have been brought in the proposed transferee forum, and second, whether a balancing of the convenience of the parties and the interest of justice favors transfer in the specific case. *See, e.g., Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F. Supp.2d 1293, 1301 (S.D. Ala. 2003); *C.M.B. Foods, Inc. v. Corral of Middle Georgia*, 396 F. Supp.2d 1283, 1286 (M.D. Ala. 2005); *Irwin*, 168 F. Supp.2d at 1296. Upon reaching the second step of the analysis, courts consider the following factors: "the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency." *Bartronics*, 510 F. Supp.2d at 636 (citations omitted); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (relevant factors include "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's

familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances"). Given the deferential, case-specific nature of the inquiry, the foregoing factors are not applied in a rote, mechanical way, nor are they an exhaustive, all-encompassing catalogue of permissible considerations. *See Okongwu v. Reno*, 229 F.3d 1327, 1331 (11th Cir. 2000) ("A full venue analysis should consider what districts would support venue and analyze all convenience factors."); *Irwin*, 168 F. Supp.2d at 1296 ("these factors provide no mechanical test").

### B. Application of Standard.

#### 1. Whether Action Could Have Been Brought in Transferee Forum.

With regard to the first step of the § 1404(a) analysis, defendants assert (without objection from plaintiffs) that this action could have been originally brought in the proposed transferee forum. The Court agrees. Under the relevant portions of the venue statute, a civil action in which federal jurisdiction is predicated solely on diversity may be brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a). Both of these avenues for laying venue in the Northern District of Georgia appear satisfied here. With respect to the first possibility, for venue purposes, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Defendants state that all defendants are subject to personal jurisdiction in Georgia, such that they would all be deemed to "reside" in Georgia under § 1391(c), and that defendant RBS Worldpay's headquarters are located in the Northern District of Georgia.[4] Plaintiffs apparently concede the validity of these statements; therefore, venue in the proposed transferee forum would be proper under § 1391(a)(1).

Similarly, with respect to the second means of establishing venue under § 1391, defendants' unrebutted evidence is that RBS Worldpay created the relevant compensation guidelines, made decisions regarding plaintiffs' pay, calculated plaintiffs' commissions, and

---

[4] On the latter point, defendants offer supporting evidence in the form of an affidavit from RBS Worldpay's Vice President of Petroleum National Sales that RBS Worldpay maintains its principal place of business in Atlanta, Georgia. (Doc. 12, Exh. A, ¶ 3.)

investigated plaintiffs' conduct that led to their discharge, all in the Northern District of Georgia. (Doc. 12, Exh. A, ¶ 9, 11.) Under the circumstances, it cannot reasonably be debated (and plaintiffs do not dispute) that a substantial part of the events or omissions giving rise to their claims occurred in the proposed transferee forum. Clearly, then, the first step of the § 1404(a) analysis is satisfied here, irrespective of whether venue is assessed through the lens of § 1391(a)(1) or § 1391(a)(2).

2. *Plaintiffs' Choice of Forum.*

Continuing on to the second step (*i.e.*, balancing the convenience and fairness considerations), a plaintiff's chosen forum is a factor that is entitled to considerable, albeit not controlling, weight.[5] *See Ricoh*, 870 F.2d at 573 ("federal courts traditionally have accorded a plaintiff's choice of forum considerable deference"); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."); *Bartronics*, 510 F. Supp.2d at 637 ("a plaintiff's choice of forum should be honored so long as venue is proper there, unless substantial countervailing considerations militate to the contrary"). Baker, Batto and McMeekin selected the Southern District of Alabama as a forum for their lawsuit, and their preference deserves deference in the § 1404(a) inquiry. Nonetheless, defendants seek to minimize this factor by invoking the limiting principles that a plaintiff's choice of forum receives less deference if the plaintiff is not a citizen of that forum or if the operative facts did not occur there.[6]

The facts are not entirely supportive of defendants' position. In particular, one plaintiff, Chris Baker, avers that he is indeed an Alabama resident who maintained his business office for defendants in Daphne, Alabama and received commission payments from defendants in

---

[5] Defendants readily acknowledge as much, as they concede that "Plaintiffs' choice of forum is a primary consideration in ruling on a motion to transfer." (Doc. 16, at 3.)

[6] *See, e.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (noting that where plaintiff's choice of venue is not his "home forum, … the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable") (citation and internal quotation marks omitted); *Dendy v. Decker Truck Line, Inc.*, 2010 WL 3398987, *3 (M.D. Ala. Aug. 26, 2010) ("when the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration") (citation omitted).

Alabama. (Doc. 15, Exh. A, ¶¶ 2, 5.) And a second plaintiff, Richard Batto, states in his declaration that Alabama was within his sales territory when he was employed by defendants, that business generated in Alabama accounted for roughly a quarter of his 2009 income, and that his Alabama customers were directly affected by the PMAA contract and defendants' alleged improprieties in computing fees. (Doc. 15, Exh. B, ¶¶ 2-6.) In light of these facts, which defendants do not dispute, it is counterfactual to suggest that <u>no</u> plaintiffs are Alabama citizens or that <u>none</u> of the operative facts occurred in Alabama; to the contrary, plaintiffs' evidence shows that their chosen forum does in fact have a substantial nexus to this dispute, both because it is plaintiff Baker's home state and because a meaningful portion of the events pertaining to this dispute took place in Alabama.[7] Accordingly, the Court will give deference to plaintiffs' chosen forum for the § 1404(a) analysis, albeit not in a conclusive or controlling manner.

### 3. *Convenience of Witnesses and Parties.*

Next, in balancing convenience and fairness issues, it is appropriate to consider the convenience of non-party witnesses and parties themselves. "[C]ourts have recognized that, aside from the plaintiff's own choice of forum, the most important factor in passing on a motion

---

[7] On the "home forum" issue, defendants' point is that not all plaintiffs live in Alabama, inasmuch as plaintiff Batto is a Florida citizen and plaintiff Chris McMeekin hails from South Carolina. (Doc. 15, Exh. B, ¶ 1; Exh. C, ¶ 1.) Defendants' logic is unpersuasive, however, because it would imply that deference is never warranted when there are multiple plaintiffs from multiple states, such that a defendant could always use § 1404(a) to override plaintiffs' choice of forum if their citizenship is not unanimous. Such a proposition runs contrary to the purpose underlying the deference to a plaintiff's choice of forum. The lone case cited by defendants is readily distinguishable, and does not reasonably support their position. *See Range Creek Holdings, LLC v. Cypress Capital, II, LLC*, 2009 WL 857533, *7 (S.D. Ala. Mar. 25, 2009) (deeming plaintiffs' choice of Southern District of Alabama forum "not entitled to as much weight" as it otherwise would be where "most or all of the plaintiffs are citizens of Florida"). On the "substantial part of the events" issue, defendants may be correct that a substantial part of the events giving rise to this dispute occurred in Georgia, but plaintiffs' evidence confirms that Alabama's nexus to this dispute is not attenuated, random, or imaginary. Plaintiff Baker was based in Alabama when employed by defendants, and plaintiff Batto worked with numerous Alabama customers on defendants' behalf, including various customers whom plaintiffs contend were "cheated" by defendants. Those events are directly linked to plaintiffs' commissions, their alleged compensation contract with defendants, and the circumstances of plaintiffs' dismissal, which are all squarely at issue in these proceedings. Accordingly, the Court cannot endorse defendants' view that "none of the operative facts giving rise to Plaintiffs' claims against Defendants occurred in this District." (Doc. 12, at 13.)

to transfer under § 1404(a) is the convenience of the witnesses." *Bartronics*, 510 F. Supp.2d at 637-38 (citations and internal quotation marks omitted); *see also Lasalle Bank*, 274 F. Supp.2d at 1302 ("The most important factor is the convenience of the witnesses.").[8] Both sides offer, at best, sketchy information as to the non-party witnesses they intend to use. Defendants indicate that certain third-party witnesses in Portland, Maine, have information concerning "underlying forgeries which led to the termination of Plaintiffs' employment." (Doc. 12, at 14-15.) Defendants cite the inconvenience to those witnesses of having to change planes to fly to Mobile, Alabama, versus a direct flight to Atlanta, Georgia, and the possibility that the latter flight might be less expensive than the former.[9] These kinds of incremental, almost trivial dislocations for a small number of witnesses (whom defendants would be asking to travel considerable distances to testify on their behalf in either scenario) are hardly the stuff of a § 1404(a) transfer. Indeed, the Court will not transfer this action to the Northern District of Georgia to eliminate a 45-minute layover in the Atlanta airport for one or two witnesses traveling from Maine. Besides, the significance of these witnesses to the triable issues in this case is debatable, given defendants' characterization of them as having merely "reported" certain events to RBS Worldpay that culminated in the termination of plaintiffs' employment. (Doc. 12, Exh. A, ¶ 11.)[10] The

---

[8]   In considering this factor, courts place a premium on specific information concerning the identity and location of the affected witnesses, and the significance of their potential testimony. *See, e.g., Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990) ("[C]ourts should look to the nature and quality of the witnesses['] testimony with respect to the issues in the case."); *American Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 262 (W.D. Mo. 1980) ("[I]f the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied.").

[9]   Defendants proffer no evidence that air travel from Portland, Maine to Atlanta is appreciably less expensive than air travel from Portland, Maine to Mobile. Based on the undersigned's own air travel experience, as well as an unscientific study of sample itineraries on various websites, it is not apparent that this would be so. Besides, any marginal difference in airfares may be counterbalanced by the likelihood of cheaper ground transportation, hotel, and meal costs in Mobile, as compared to Atlanta.

[10]   After all, defendants' own employees in Georgia who received these "reports" could testify at trial as to what the Maine witnesses told them without triggering any hearsay problems since the evidence would not be offered for the truth of the matter asserted, but only to show that the reports were received and that they served as catalyst for RBS Worldpay's
(Continued)

convenience of the witnesses does not favor transferring this action to the Northern District of Georgia.[11]

With respect to the convenience of the parties, the evidence is once again mixed. Defendant RBS Worldpay, which is headquartered in the Northern District of Georgia, would plainly find it more convenient to litigate this case in that forum rather than in the Southern District of Alabama. But plaintiff Chris Baker, who lives in the Southern District of Alabama, would suffer an equal and corresponding inconvenience if transfer occurred. It is well settled that "where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain." *Cellularvision Technology & Telecommunications, L.P. v. Alltel Corp.*, 508 F. Supp.2d 1186, 1189 (S.D. Fla. 2007) (citations and internal quotation marks omitted); *see also Bell v. K Mart Corp.*, 848 F. Supp. 996, 1000 (N.D. Ga. 1994) (similar); *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala. 1994) ("Section 1404(a) provides for transfer to a more convenient forum, but not to one which is likely to prove equally convenient or inconvenient."). Defendants suggest that this principle is inapplicable here, in that the Northern District of Georgia would also be a more convenient forum for plaintiffs Richard Batto and Chris McMeekin, as well as defendants Royal Bank of Scotland and Citizens Financial. But the mileage differential for plaintiff Batto (who resides in Fort Myers, Florida) is slight, even under defendants' calculations. (Doc. 12, at 7.)[12] And it is unclear why

---

investigation into plaintiffs' conduct. And of course, defendants' own employees in Georgia could then testify about the investigation they conducted, their findings, and the ensuing decision to discharge all three plaintiffs for cause. At most, then, the Maine witnesses appear to be mere bit players in defendants' version of events.

[11] This conclusion is reinforced by plaintiffs' evidence that they have non-party witnesses located in the Southern District of Alabama for whom this forum would obviously be more convenient. (Doc. 15, at 15.) Although defendants question the relevance of these witnesses, it appears that plaintiffs intend to call them to testify concerning defendants' alleged unlawful payment practices about which plaintiffs complained shortly before being fired.

[12] As for plaintiff McMeekin, the Northern District of Georgia is unquestionably closer to his Chapin, South Carolina home than is the Southern District of Alabama. (Doc. 12, at 7.) But he would have to travel a significant distance to either forum, and it is unclear whether an Atlanta venue would be appreciably more convenient for him, particularly given McMeekin's uncontroverted statement that his present job does not typically require him to travel through Atlanta. (McMeekin Decl., ¶ 7.)

Royal Bank of Scotland and Citizens Financial would need to travel to either venue if, as defendants insist, they were not plaintiffs' employer and have been improperly named as parties defendant. Besides, given that Royal Bank of Scotland and Citizens Financial would need to travel many hundreds of miles to either forum, the marginal difference in distance between the two would not appear to have a meaningful effect on their convenience. In short, the Court finds that the convenience of the parties is largely a neutral factor in the § 1404(a) analysis. Transferring venue to the Northern District of Georgia would not significantly or unambiguously promote the parties' convenience, but as a practical matter would simply move this case from plaintiff Baker's backyard to defendant RBS Worldpay's backyard, while working no significant benefit or detriment on any other party.

      4.   *Other Considerations.*

  The remaining factors can be dispatched in short order. With respect to ease of access to documents and other sources of proof, defendants argue that most documents pertaining to the compensation and employment decisions at issue here may be found at RBS Worldpay's headquarters in the Northern District of Georgia. But plaintiffs themselves also have relevant documents in their possession. Moreover, defendants have failed to make any showing that access to RBS Worldpay documents will be impaired if venue remains in this District Court; therefore, this factor does not strongly favor transfer. *See Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 2010 WL 3056600, *5 (S.D. Fla. Aug. 4, 2010) ("Producing documents and other files for litigation … is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval.").[13]

  As for the parties' financial ability to bear the cost of the different venues, defendants' argument is that the Southern District of Alabama "will be more costly for the majority of the

---

[13]   In so finding, the Court recognizes that technological advances have not entirely mooted the "ease of access to documents" factor in the § 1404(a) analysis. *See, e.g., In re Volkswagen of America, Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). Rather, the Court's conclusion flows from defendants' failure to show why, in the context of this case, the location of documents in the Northern District of Georgia renders them materially less accessible in this forum, or why readily available technological and logistical workarounds could not substantially bridge that gap with a modicum of effort. In other words, defendants have not shown why this factor matters here.

named parties, since all but one are not located in the Southern District of Alabama." (Doc. 12, at 15-16.) Of course, by defendants' own admission, all but one of the named parties are not located in the Northern District of Georgia either; therefore, this factor (as argued by defendants) cannot favor transfer of venue.[14]

Lastly, defendants contend that the factor of trial efficiency and expense to the justice system favors transfer, but they make no persuasive showing to support that contention. To be sure, defendants state that in the Northern District of Georgia, "the court would have power to compel attendance of witnesses located in Atlanta, Georgia." (Doc. 12, at 16.) Presumably, however, those witnesses are RBS Worldpay employees, which greatly diminishes the significance of that factor. *See Kenneth F. Hackett*, 2010 WL 3056600, at *6 ("Processes to compel a witness's presence are less necessary for employee-witnesses who are controlled by one of the litigants."). And while defendants state in conclusory terms that "transfer will result in more efficient pretrial discovery and savings of time and money with respect to pretrial and trial proceedings" (doc. 12, at 16), they do not explain why that would be so. The Court is aware of no reason why the Northern District of Georgia could conduct these proceedings in a more cost-effective or efficient manner than the Southern District of Alabama could.

### III. Conclusion.

Defendants do not wish to proceed in this forum, but they have failed to meet their burden of showing that the proposed transferee venue would promote the interests of convenience and justice. Plaintiffs' choice of forum is entitled to considerable weight, and defendants have not come forward with sufficient other countervailing considerations to overcome that deference. Indeed, most of the factors cited by defendants are neutral, or at best only slightly favor transfer. That is not enough. *See, e.g., United States v. $633,021.67 in U.S. Currency*, 842 F. Supp. 528, 535 (N.D. Ga. 1993) ("[I]f the balance of factors is only slightly in favor of the movant, a court should deny the motion to transfer."). Any incremental gains in

---

[14] To be clear, the Court's analysis of this factor does not embrace plaintiffs' assertion that transfer is inappropriate because there are "twenty flights from Atlanta to Mobile each day." (Doc. 15, at 16.) Plaintiffs misread their Exhibit D, double- and triple-counting various of the nine daily flights reflected on the exhibit by failing to account for code-sharing among partner airlines. Still, the point remains that there are frequent daily flights from Atlanta to Mobile, and defendants have made no showing that it would be prohibitively cumbersome for RBS Worldpay employees to travel here for trial.

convenience or efficiency that might be derived from transferring this action to the Northern District of Georgia are too modest, too attenuated, and too speculative to warrant use of the § 1404(a) transfer machinery here. Therefore, the Court in its discretion **denies** Defendants' Motion to Dismiss or in the Alternative, Motion to Transfer Venue (doc. 12). Plaintiffs' Motion for Leave to File Additional Support (doc. 17) is likewise **denied** for the reasons stated *supra*.

DONE and ORDERED this 15th day of October, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE